IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2024

## IN RE MIGUEL P., ET AL.

**Appeal from the Juvenile Court for Shelby County
No. FF1819  W. Ray Glasgow, Special Judge**

_____

### No. W2023-01261-COA-R3-PT

_____

The Tennessee Department of Children's Services filed a petition to terminate a mother's parental rights to two of her children. The trial court found that two grounds had been proven and that termination of the mother's parental rights was in the children's best interests. Based on these findings, the court terminated the mother's parental rights. The mother appeals. We reverse the trial court's finding that the ground of persistence of conditions has been proven but affirm the trial court's finding that another ground for termination has been proven and that termination of the mother's parental rights is in the children's best interests. Thus, we affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Reversed in Part and Affirmed in Part**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Anna L. Phillips, Germantown, Tennessee, for the appellant, Tambara T.[1]

Jonathan Skrmetti, Attorney General and Reporter, and Amber L. Barker, Senior Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

---

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

On March 28, 2022, the Tennessee Department of Children's Services ("DCS") filed a petition to terminate the parental rights of Tambara T. ("Mother") to two of her children, Miguel P., born in July of 2016, and Jeremiah T., born in November of 2017 ("the Children").[2]

Following a mistrial in 2022, the case against Mother was tried on June 16 and 28, 2023. The witnesses who testified included Mother; Dreassha Williams, who was a family service worker employee for DCS and the original family services caseworker who remained involved until May of 2022 when she resigned to take employment elsewhere; Shurvete Mosley, also a family service worker who received the file upon Ms. Williams resignation in May of 2022; Chakitra Hill, who was employed by Youth Villages, the agency that provides services for the Children and foster parent, and who has been counseling the Children for three years and provides individual therapy weekly to the Children; Niesha S., the foster mother with whom the Children resided for almost three years prior to trial; and Michelle Fox, who was the child protective services worker who investigated the allegations of lack of supervision that arose from the first referral and the medical neglect that led to the second referral and removal of the Children.

Pursuant to an order entered on August 4, 2023, the Juvenile Court of Shelby County ("the trial court") terminated Mother's rights to the Children on two grounds: (1) failure to remedy persistent conditions, and (2) failure to manifest an ability and willingness to care for the Children. The court further concluded that termination of Mother's parental rights was in the Children's best interests.

This appeal by Mother followed.

### ISSUES

Mother presents four issues for our review. We have determined that three of those issues are dispositive, which we have restated as follows:

1. Whether the trial court erred in concluding that Mother had failed to manifest a willingness or ability to assume custody of her children pursuant to Tennessee Code Annotated § 36-1 113(g)(14).

2. Whether the trial court erred in concluding that the conditions leading to the child's removal persisted pursuant to Tennessee Code Annotated § 36-1-13(g)(3).

---

[2] The petition also sought to terminate the parental rights of Miguel A. P. to his son Miguel and the parental rights of Anthony E. to his son Jeremiah. The parental rights of both fathers were terminated pursuant to orders entered on October 20, 2022, and neither father appeals the termination of his parental rights. Mother is the only appellant.

3. Whether the trial court erred in its findings and conclusions regarding the best interest factors enumerated in Tennessee Code Annotated § 36-1-113(i)(1).

**STANDARD OF REVIEW**

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002) (citations omitted). "[T]his right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts" and further "eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (citations omitted).

In an appeal, "this [c]ourt is required 'to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.'" *In re Connor B.*, 603 S.W.3d 773, 779 (Tenn. Ct. App. 2020) (quoting *In re Carrington H.*, 483 S.W.3d at 525). In doing so, we must "determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). Stated another way, we must make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.,* 319 S.W.3d at 596–97).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citation omitted).

.

I. GROUNDS

Termination of parental rights must be based, in part, on a finding by the court based on clear and convincing evidence that one or more grounds for termination of parental rights have been established. *See* Tenn. Code Ann. § 36-1-113(c).

In the present case, the trial court determined that the evidence clearly and convincingly supported a finding of two grounds for termination of Mother's parental rights: (1) failure to manifest an ability and willingness to care for the Children, and (2) failure to remedy persistent conditions. We will discuss each ground in turn.

A. Failure to Manifest an Ability and Willingness to Assume Custody

The trial court found that DCS had proven that Mother failed to manifest an ability and willingness to assume legal and physical custody or financial responsibility of the Children pursuant to Tennessee Code Annotated § 36-1-113(g)(14), which reads as follows:

> A parent . . . has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

This ground requires that the petitioner prove two elements by clear and convincing evidence. First, the petitioner must prove that the parent failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]. *Id.* Second, the petitioner must prove that placing the child[ren] in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]. *Id.* Both elements must be satisfied for this ground to be established. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020).

As for the first element, our Supreme Court has explained that the petitioner must prove by clear and convincing evidence that the parent has failed to manifest *either* ability or willingness. *Id.* (emphasis added). If either is proven, then the first element is satisfied. *Id.*

With regard to the second element, courts have not identified a set list of circumstances that constitute substantial harm given that substantial harm can arise through various forms of conduct. *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *11 (Tenn. Ct. App. June 20, 2018) (citing *In re Maya R.*, No. E2017-01634-

COA-R3-PT, 2018 WL 1629930, at \*7–8 (Tenn. Ct. App. Apr. 4, 2018)) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)). However, this court has stated that

> [T]he use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Id.* at \*11–12.

Here, in its analysis of the first element, the trial court found "that Mother has not demonstrated a willingness or an ability to understand what is necessary to regain custody of her children." This finding was based, in part, on what the court described as "Mother's continued criminal acts, her move out of state, and Mother's inconsistent and fractious communications with the Department personnel and foster parent[.]" The court also noted that Mother failed to manifest her ability and willingness to care for the Children through her repeated incarcerations,[3] aggression toward DCS workers and others, failure to consistently visit the Children, and extended periods when she would not communicate with DCS. The court found that Mother's "aggression issues" interfered with her ability to care for the Children.

Some of Mother's anger and aggression was revealed in her communication with DCS personnel. Specifically, she was aggressive in her communications with DCS investigator Michelle Fox during the initial investigations prior to the Children's removal. Later, she made threats against DCS caseworkers, and threatened Dreassha Williams, the DCS caseworker assigned to her case, with physical harm, to the point where Ms. Williams instructed Mother to communicate with her only through her attorney. Further, Ms. Williams did not feel safe enough to conduct a home visit to Mother's residence, and asked the guardian ad litem to conduct the visit for her.

With regard to the second element, the trial court found "that removal from the children's current placement and returning the children to the Mother's custody would pose a genuine risk of substantial harm to the children, particularly to their psychological welfare." These findings are supported by the record, including the findings referenced above.

---

[3] The testimony revealed that Mother had been arrested three times and incarcerated twice since the Children's removal. First, Mother was incarcerated from August 2019 through January 2020 for assault. She was again arrested in April 2022 for harassment and assault, but was released without serving time. She was then incarcerated from January 2023 through June 2023 for assaulting a teacher at her nursing school in Texas.

Based upon these and other findings, the trial court ruled: "The allegation of failure to manifest an ability and willingness to parent pursuant to Tenn. Code Ann. § 36-1-113(g)(14) has been met by clear and convincing evidence and the Petition for Termination of Parental Rights on that ground is sustained." Having reviewed the record, we find that it supports the trial court's ruling that this ground was proven by clear and convincing evidence. Thus, we affirm the trial court's ruling regarding this ground.

## B. Persistence of Conditions

Tennessee Code Annotated § 36-1-113(g)(3) provides that a person's parental rights can be terminated when:

(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard[.]

The purpose of this ground "is 'to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child.'" *In re Navada N.*, 498 S.W.3d 579, 605 (Tenn. Ct. App. 2016) (citing *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)) (quoting *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at *9 (Tenn. Ct. App. Mar. 3, 2008)). Consequently, "[t]he failure to remedy the conditions which led to the removal need not be willful." *Id.* (citing *In re*

*T.S. and M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at \*6 (Tenn. Ct. App. July 13, 2000)).

As stated above, this ground for termination requires that a child be **removed from the custody of a parent or guardian** for a period of six months **pursuant to a court order** entered following a dependency and neglect petition. Tenn. Code Ann. § 36-1-113(g)(3) (emphasis added); *see In re Octavia C.*, No. W2021-00575-COA-R3-PT, 2022 WL 210068, at \*15 (Tenn. Ct. App. Jan. 24, 2022); *see also In re D.V.*, No. E2018-01438-COA-R3-PT, 2019 WL 1058264, at \*5 (Tenn. Ct. App. Mar. 6, 2019). The existence of an order of removal is "the threshold consideration" for this ground. *In re Octavia C.*, 2022 WL 210068, at \*15 (citing *In re Lucas S.*, No. M2019-01969-COA-R3-PT, 2021 WL 710841, at \*4 (Tenn. Ct. App. Feb. 24, 2021)). As Mother succinctly states in her brief, "No such order exists in this matter."

Moreover, as Mother correctly notes, although DCS's petition alleged that Miguel P. and Jeremiah P. are dependent and neglected children, it stated that "The legal custodians of the children are currently. . . the Department of Human Services for the State of Alabama, Madison County" and "The children were removed from the custody of the state of Alabama." A Special Judge at the Juvenile Court signed an ex parte order on August 30, 2018, awarding temporary custody of both children to DCS.

While the record does include an adjudication order that, inter alia, grants DCS legal and physical custody of the Children, neither this order nor any other order in the record "removed" the Children from Mother's custody or the custody of a guardian. Rather, the Children were removed from the custody of the state of Alabama. Absent an order removing the Children from the custody of a parent or guardian, we cannot sustain a termination petition on the grounds of § 36-1-113(g)(3). *See In re Zayda C*, E2022 01483-COA-R3-PT, 2023 WL 4417529, at \*6 (Tenn. Ct. App. July 10, 2023) ("The 'threshold consideration' for this ground is a court order of removal from the home or custody of the parent."); *See generally In re Allie-Mae K.*, No. M2020-00215-COA-R3-CV, 2020 WL 6887870, at \*11–12 (Tenn. Ct. App. Nov. 24, 2020) (reversing the termination ground of the persistence of conditions based on the absence of a removal order). Accordingly, we reverse this ground of termination. This determination, however, does not end our inquiry because only one ground of termination is necessary to support a termination decision. *See* Tenn. Code Ann. § 36-1-113(g).

Because we have determined that a ground has been established upon which to terminate Mother's parental rights, our focus shifts to whether it is in the Children's best interests that Mother's rights be terminated. *See In re Audrey S.*, 182 S.W.3d at 876–77.

## II.     BEST INTEREST FACTORS

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). As such, the courts must review each relevant factor from the child's, rather than the parent's perspective. *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citation omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d at 681 (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether they amount to clear and convincing evidence that termination is in the Children's best interests. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

Tennessee Code Annotated § 36-1-113(i)(1) provides a non-exhaustive list of factors for courts to consider in determining whether termination is in a child's best interest.[4] These statutory factors are illustrative, not exclusive, and any party to the termination proceedings is free to offer proof of any other factor relevant to the best interest analysis. *See id.*

In the instant case, the trial court analyzed every statutory best interest factor. Although its findings concerning each factor are not extensive, they are sufficient to "facilitate appellate review and promote just and speedy resolution of appeals." *Audrey S.*, 182 S.W.3d at 861.

The trial court made the following findings and conclusions concerning the best interest factors enumerated in Tennessee Code Annotated § 36-1-113(i)(1):

a. the children will be best served by remaining in a stable home and maintaining continuity of care.

b. a change of caretakers and physical environment would likely have a negative impact on the children's emotional, psychological, and medical condition;

c. Mother has not provided continuity and stability in meeting the children's basic material, educational, housing, and safety needs;

---

[4] The statute was amended in 2021, prior to the commencement of this action, and the trial court correctly identified and considered the factors set forth in the amended version of Tennessee Code Annotated § 36-1-113(i). *See* Tenn. Code Ann § 36-1-113(i)(1) (effective April 22, 2021 to June 30, 2021).

d. Mother has an attachment with the children, but it cannot be called secure at this point in time and there is no reasonable expectation that it will become so in the near future. The testimony at trial was that the children do have a secure and healthy bond with Ms. [S.], their foster mother;

e. Mother has not maintained regular visitation or other contact with the children and used the visitation or other contact to cultivate a positive relationship with the children;

f. there was no evidence provided to determine whether the children would be afraid to live in Mother's residence but there was testimony that the children's behaviors were bizarre when they entered state custody;

g. evidence was provided that if the children were placed in Mother's home they would likely experience trauma;

h. the children have both created a healthy parental attachment with foster mother Neisha [S.] in the absence of the parents;

i. termination of parental rights will have little or no negative impact on the children's access to information regarding their heritage.

j. Mother has not demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in her home.

k. the Mother has not taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions.

l. the department has made reasonable efforts to assist Mother in making a lasting adjustment for the benefit of the children.

m. Mother has not properly addressed the circumstances, conduct, or conditions that made an award of custody unsafe and not in the children's best interest.

n. Mother produced at least one lease but it was never determined whether Mother provided a home for either of the children and she continues to remain unstable as to her housing.

o. Mother took the children to live with her mother out of state and it has not been shown that Mother provided safe and stable care for the children.

p.  Mother has not demonstrated an understanding of the basic and specific needs required for the children to thrive.

q.  Mother has not demonstrated the ability and commitment to creating and maintaining a home that meets the children's basic and specific needs and in which the children can thrive.

r.  whether the physical environment of Mother's current home is healthy and safe for the [children] is unknown, but the children are in a healthy and safe environment in the foster home of Niesha [S.];

s.  Mother has not consistently provided financial support for the children but she has provided gifts, clothes, and school supplies or books; and

t.  the mental or emotional fitness of the Mother would likely be detrimental to the children at this time, and prevent her from consistently and effectively providing safe and stable care and supervision of the children.

As noted earlier, "[f]acts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d at 681 (citations omitted). Having reviewed the record, we find that the evidence preponderates in favor of each of the trial court's best interest findings.

After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether they amount to clear and convincing evidence that termination is in the child's best interests. *Id.*; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56.

> Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court

- 10 -

must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d at 682 (in text citations omitted).

Here, the trial court concluded that DCS had proven by clear and convincing evidence that termination of the parental rights of Mother is in the Children's best interests. Having reviewed the record and considered the best interest factors as found by the trial court, we agree with the trial court's conclusion that the combined weight of the relevant factors amount to clear and convincing evidence that termination of Mother's parental rights is in the Children's best interests. *Id.*; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56.

Accordingly, we affirm the trial court's determination that termination of Mother's parental rights is in the Children's best interests.

Having affirmed the trial court's determination that a ground for termination of Mother's parental rights has been proven and that termination of Mother's parental rights is in the Children's best interests, we affirm the termination of Mother's parental rights to Miguel P. and Jeremiah T.

## IN CONCLUSION

For the reasons stated above, we reverse that portion of the trial court's judgment finding that the ground of persistent conditions had been proven and affirm the trial court in all other respects. Accordingly, we affirm the termination of Mother's parental rights to Miguel P. and Jeremiah T. Costs of appeal are assessed against the appellant, Tambara T.

_____
FRANK G. CLEMENT JR., P.J., M.S.